UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | 1:11-CR-92 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| DERRICK LINDSEY | ) | |

**MEMORANDUM**

On December 19, 2011, Defendant Derrick Lindsey ("Defendant") filed a motion to suppress any and all evidence seized on September 1, 2011, as the result of a search by law enforcement (Court File No. 14). This motion was referred to United States Magistrate Judge Susan K. Lee, who held a hearing and subsequently filed a report & recommendation ("R&R") recommending Defendant's motion be denied (Court File No. 21). Defendant timely objected (Court File No. 23), and the government responded (Court File No. 24). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 21). Accordingly, Defendant's motion to suppress will be **DENIED** (Court File No. 14).

**I.    RELEVANT FACTS**[1]

On September 1, 2011, Chattanooga Police Department Officer Ernest Fielden ("Officer Fielden" or "Fielden") was alone on routine patrol in a high-crime area in east Chattanooga. Approximately one hour before the incident at issue, Officer Fielden noticed a Chrysler sedan in the area. He did not know the driver or occupant of the vehicle, but he became suspicious that they

---

[1] Defendant does not challenge the Magistrate Judge's account of the testimony and evidence presented at the hearing. Therefore, the Court hereby adopts by reference the Magistrate Judge's factual findings (Court File No. 21, pp. 1-4). The Court will briefly summarize the relevant facts for purposes of this Memorandum.

might be involved in drug activity based on his observations. About an hour later, around 5:00 p.m., Officer Fielden saw the same vehicle again. Officer Fielden had been looking for the vehicle and for a reason to pull it over. At that point, Fielden observed the driver, Melvin Brummit ("Brummit"), was not wearing his seatbelt while operating the vehicle. When Brummit saw Fielden, who was patrolling in a marked police cruiser, he froze briefly and appeared to attempt to avoid detection by leaning behind the driver's side door post. Brummit then put on his seatbelt. As the vehicle drove past the patrol car, Officer Fielden initiated his emergency equipment in order to conduct a traffic stop based on the driver's violation of Tennessee's safety belt ordinance.

Officer Fielden observed the vehicle took a longer than usual time to stop, slowing and starting back up again for a few blocks as the driver appeared to be looking for a place to pull over. While following the vehicle, Officer Fielden noticed the front seat passenger, later identified as Defendant, open the front passenger side door and hold it ajar while the vehicle was still in motion. When the vehicle finally rolled to a stop a few blocks later, Defendant jumped out of the vehicle and immediately began walking away. Defendant had his back to Officer Fielden and Defendant's hands were in front of his waist and, from the back, it appeared to Fielden Defendant was making a pulling or tugging motion with his arms.

Officer Fielden drew his weapon and ordered Defendant to stop and show his hands. Officer Fielden admits he had not observed any violation of the law by Defendant at the time he drew his weapon. Instead of stopping as ordered, however, Defendant ran away. Brummit also left the vehicle, walking or running away in the opposite direction from Defendant. Officer Fielden considered this a ploy and chose to focus his attention on Defendant. As he pursued Defendant, Fielden called for backup on his shoulder radio.

2

During Defendant's flight, Officer Fielden yelled for Defendant to stop and show his hands. As Defendant ran, Officer Fielden could see Defendant was holding a small, dark, steel handgun in his right hand. Officer Fielden ordered Defendant to stop and drop his weapon. Instead of obeying this command, Defendant threw his handgun into a wooded area and continued to flee. Officer Fielden continued to pursue Defendant and eventually used his taser to stop Defendant. Once stopped, Defendant was placed in handcuffs. The entire incident lasted less than five minutes.

After Defendant was in handcuffs, a backup officer arrived on the scene. As the officers walked Defendant back to the patrol car past the wooded area where the gun was thrown, Officer Fielden gave the other officer instructions to recover the handgun. The backup officer recovered a loaded .45 caliber handgun and a bandana from the wooded area where Officer Fielden saw Defendant toss the firearm.

As more officers arrived, Officer Fielden learned from one of the backup officers that Defendant had several prior felony convictions and had recently been in the news. Defendant was transported to the hospital and informed of his *Miranda* rights by Officer Fielden. At the hospital, Officer Fielden asked Defendant whether Defendant was planning to shoot him. Defendant admitted he thought about it because he had a long criminal record and considered being killed by the police as an alternative to more jail time.

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v.*

3

*Raddatz*, 447 U.S. 667, 675-76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The Magistrate Judge's assessment of a witness's testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III. DISCUSSION

Defendant objects to three of the Magistrate Judge's legal conclusions: (1) there can be no seizure without actual submission; (2) drawing a weapon and ordering someone to stop and show their hands is not a seizure within the meaning of the Fourth Amendment; and (3) Defendant did not "abandon" a firearm before he was seized (Court File No. 23, p. 2). Instead, Defendant contends Officer Fielden unlawfully seized him when Fielden drew his firearm, with the result that any evidence gathered after that point should be excluded. After reviewing the relevant law on seizure under the Fourth Amendment, the Court addresses Defendant's objections. Briefly stated, the Court denies these objections because Defendant's view of seizure is inconsistent with case law from the United States Supreme Court and the United States Court of Appeal for the Sixth Circuit. Finally, although not stated as an objection, Defendant argues Officer Fielden did not comply with the Constitutional requirements for police-citizen encounters. The Court explains why these arguments are unavailing.

### A. Seizure under the Fourth Amendment

The Fourth Amendment to the United States Constitution guards against, *inter alia*, the unreasonable seizure of a person. U.S. Const. amend. IV. A seizure within the meaning of the

Fourth Amendment occurs when a law enforcement officer "by means of physical force or show of authority terminates or restrains [a person's] freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations, quotation marks omitted, and emphasis omitted); *United States v. Jones*, — F.3d —, 2012 WL 716450, at *3 (6th Cir. Mar. 7, 2012). Because the physical capture of a person is sufficient, but not necessary, to seize him, an officer can seize a person either through physical force or a show of authority. *Brendlin*, 551 U.S. at 254. But where, as here, a defendant argues a seizure occurred as a result of an officer's show of authority, the facts must also indicate the defendant in fact submitted to the officer. *Id.* ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.") (quoting *California v. Hodari D.*, 499 U.S. 621, 626 n. 2 (1991)); *United States v. George*, No. 10-6159, 2012 WL 128402, at * 1 (6th Cir. Jan. 17, 2012) ("When a seizure is effected by a show of authority rather than physical force, 'an individual must actually yield to the show of authority to be seized within the meaning of the Fourth Amendment.'") (citations omitted). Thus, where a person does not submit to an officer's show of authority, that show of authority does not seize the person. *Hodari D.*, 499 U.S. at 629 (holding defendant not who did not stop when officer yelled "stop in the name of the law" was not seized until the officer physically tackled him).

While *Brendlin* holds a passenger as well as a driver can be seized when the police make a traffic stop, the traffic stop alone does not amount to a seizure. Rather, the relevant inquiry concerns whether the passenger actually submitted to the authority of the officer conducting the stop; "what may amount to submission depends on what a person was doing before the show of authority: a

fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." *Brendlin*, 551 U.S. at 262. Under this standard, Brendlin submitted–and was therefore seized within the meaning of the Fourth Amendment–when he stayed inside the car as an officer effected a traffic stop. Bolting from a car after an officer has made the stop does not amount to a submission to the officer's authority, and thus does not constitute seizure. *United States v. McCauley*, 548 F.3d 440, 444 (6th Cir. 2008).

Defendant first objects to the Magistrate Judge's legal conclusion no seizure can occur without actual submission (Court File No. 23, p. 2). In making this objection, Defendant's argument proves difficult to follow. Defendant appears to focus on a handful of cases cited in the R&R and contends these cases are factually distinguishable from his own case (*see id.* at pp. 2-5 (discussing *United States v. Jones*, 562 F.3d 768 (6th Cir. 2008), *McCauley*, *Adams v. City of Auburn Hills*, 336 F.3d 515 (6th Cir. 2003), and *Hodari D.*)). Certainly there are factual differences between this case and the cases Defendant discusses, but none of these cases calls into question the legal principle Defendant challenges, namely, whether a seizure under the Fourth Amendment where an officer has made a show of authority requires a defendant to actually submit. Defendant's sole argument addressing this issue centers on the standard for seizure announced by the United States Supreme Court in *United States v. Mendenhall*: "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," 446 U.S. 544, 554 (1980). Thus, Defendant contends although he did in fact flee from Officer Fielden, an objectively reasonable[2]

---

[2] As with most Fourth Amendment reasonableness inquiries, this seizure standard focuses on objective, not subjective, reasonableness. *See Mendenhall*, 445 U.S. at 555.

person would not have felt free to do so, and would therefore have been seized under the Fourth Amendment.

Defendant's first objection fails for two reasons. First, in focusing only on the *Mendenhall* standard, this objection misapprehends the nature of the encounter between Defendant and Officer Fielden. In *Mendenhall*, the relevant question was whether an officer's permissible investigative stop of a person under *Terry v. Ohio*, 392 U.S. 1 (1968), had evolved into a seizure of that person, *Mendenhall*, 446 U.S. at 552-53. Here, by contrast, Officer Fielden had not yet effected the traffic stop at the time Defendant bolted from vehicle. Thus, *Mendenhall* does not provide the proper standard to determine whether a seizure occurred at the time Defendant jumped from the car and Officer Fielden drew his firearm. The second reason this objection fails flows from the first reason. In relying on *Mendenhall*, the objection ignores more recent, specific guidance from both the Supreme Court and the United States Court of Appeals for the Sixth Circuit on when a person is seized under the Fourth Amendment in circumstances akin to the facts in this case.[3] As discussed above, it is well settled that when an officer makes a show of authority in an effort to seize a person, seizure only occurs when that person actually submits. *Brendlin*, 551 U.S. at 254; *Jones*, 2012 WL 716450, at *3. Because a finding Defendant was seized within the meaning of the Fourth Amendment requires a showing Defendant actually submitted to Officer Fielden's show of authority, the Court **DENIES** Defendant's first objection.

Defendant next contends he was seized when Officer Fielden drew his firearm and yelled

---

[3] Curiously, Defendant commits the very error he accuses the Magistrate Judge of making: "The [R&R] goes on to cite caselaw for the proposition that no matter what the show of authority or physical restraint, a person is not officially seized until they [sic] show actual submission. This result ignores this long-established Supreme Court caselaw [citing *Mendenhall*]...." Court File No. 23, p. 7.

7

for Defendant to stop. After lodging this objection at the beginning of his brief, however, Defendant offers no supporting arguments the Court can discern,[4] perhaps because case law from the Sixth Circuit and Supreme Court weigh heavily against this objection. In a case where police officers fired two shots in the direction of two persons–suspected of having committed a burglary–who had ignored the officers' order to halt, the Sixth Circuit concluded "[t]he use of deadly force standing alone does not constitute a seizure." *Cameron v. City of Pontiac*, 813 F.2d 782, 785 (6th Cir. 1987). More recently, in a case where a police officer fired shots at the tires of a car driven by a person who had ignored the officer's command to stop, the Sixth Circuit, reaffirming *Cameron* and noting its holding found support in a number of other courts, *Adams*, 336 F.3d at 519-20 (discussing *Cameron* and collecting cases), concluded no seizure had occurred, *id.* at 520.[5] If discharging a weapon in the manner described in *Cameron* and *Adams* does not amount to a seizure, then Officer Fielden's drawing of weapon, which Defendant may or may not have seen,[6] is insufficient to have seized Defendant. That Officer Fielden yelled for Defendant to stop or put his hands up similarly does not amount to a seizure. *See Hodari D.*, 499 U.S. at 629. Accordingly, the Court **DENIES** Defendant's objection that he was seized when Officer Fielden drew his weapon and yelled for Defendant to stop

---

[4] The only discussion resembling an argument on this point comes when Defendant seeks to distinguish one of the cases discussed in the R&R, which the Court addresses in note 5 *infra*.

[5] Defendant argues *Adams* is distinguishable from this case because 1) "the driver did not have permission to drive the vehicle;" 2) the driver was operating the vehicle in "a manner as to cause risk of harm;" and 3) *Adams* was a civil suit brought against the police officers under 42 U.S.C. § 1983 (Court File No. 23, p. 3). Nothing in *Adams* supports Defendant's two factual claims about it, and the mere fact a court is interpreting whether a Fourth Amendment seizure took place in the context of a § 1983 claim instead of a criminal case does not change the nature of the Constitutional analysis. Accordingly, the Court is unpersuaded by Defendant's attempt to distinguish *Adams*.

[6] The undisputed facts recounted by the Magistrate Judge indicate Defendant had his back to Officer Fielden when the latter drew his gun (Court File No. 21, p. 2).

fleeing.

Resolution of Defendant's third objection follows from the Court's denial of the first two objections. Defendant objects to the R&R's finding he abandoned a gun before he was seized. This objection starts from the premise Officer Fielden seized Defendant when Officer Fielden drew his gun and yelled at Defendant to put his hands up. As the Court has just explained, that premise does not hold under the facts of this case. Instead, Defendant was not seized until Officer Fielden used his taser to subdue Defendant. Thus, because Defendant discarded his gun before Officer Fielden used the taser to seize him, Defendant abandoned the firearm before the seizure took place. And there is no dispute that a defendant who abandons contraband prior to a seizure cannot challenge the admission of that contraband as evidence on the ground the contraband is the fruit of an unlawful seizure. *Hodari D.*, 499 U.S. at 629. Accordingly, the Court **DENIES** Defendant's third objection.

B.   Police-Citizen Encounters

Although not presented as an objection, Defendant devotes the lion's share of his brief to arguing Officer Fielden impermissibly exceeded the bounds of reasonable police-citizen contact.[7] Defendant makes two argument in support of this theory. First, Defendant claims Officer Fielden failed to justify his engagement of Defendant in one of the three permissible modes (Court File No. 23, p. 4). Second, Defendant argues Officer Fielden had no legal right to stop the vehicle in which Defendant was riding (*id.* at p. 7). The first argument misapprehends the proper Fourth Amendment analysis; the second argument misunderstands the governing law.

Defendant correctly notes the Sixth Circuit has identified three types of police-citizen

---

[7] Given the amount of space Defendant gives to this issue, the Court believes it important to address Defendant's arguments.

encounters: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Smith*, 594 F.3d 530, 535 (6th Cir.2010) (quoting *United States v. Waldon*, 206 F.3d 597, 602 (6th Cir.2000)). Defendant errs, however, when he argues Officer Fielden had no reasonable suspicion to detain Defendant. In making this claim, Defendant contends Officer Fielden must articulate a reasonable suspicion of criminal activity as of the time he pulled over the vehicle in which Defendant was traveling. This argument mistakes the order of Fourth Amendment argument: whether an officer has reasonable suspicion to detain a suspect is determined at the time of detention. *Jones*, 2012 WL 716450, at *2. Thus, the Court conducts the reasonable suspicion as of the time Officer Fielden seized Defendant. *Cf. id.* at *3.

When Officer Fielden subdued Defendant with his taser, he had reasonable suspicion to detain him. Reasonable suspicion, which requires an officer to articulate some suspicion "a person has been, is, or is about to be engaged in criminal activity," *United States v. Place*, 462 U.S. 696, 702 (1983), is based on the totality of the circumstances as known by the officer, *United States v. Sokolow*, 490 U.S. 1, 8 (1989). Here, Officer Fielden knew the following facts: 1) he was patrolling in a high-crime neighborhood; 2) he had been observing the vehicle in which Defendant was riding for over an hour; 3) when Officer Fielden activated his emergency equipment to pull the vehicle over, he noticed Defendant open the passenger-side door and leave it ajar while the vehicle was in motion; 4) Defendant bolted from the vehicle when it came to stop, and Brummit, the driver, did the same; 5) as Defendant fled from Officer Fielden, Defendant threw a handgun into a wooded area. *See Jones*, 2012 WL 716450, at *3 (finding reasonable suspicion where: 1) the officer was in a

high-crime area, particularly known for drug activity; (2) the officer observed the defendant and another man engaged in an apparent hand-to-hand transaction; (3) the officer saw the defendant run when he exited his car; (4) as the defendant was fleeing he threw several items to the ground). Based on all of these facts, the Court concludes Officer Fielden had reasonable suspicion to detain Defendant.

Defendant also argues Officer Fielden "had no legal right to stop [him]" (Court File No. 23, p. 7). There is some ambiguity in this claim, depending on what Defendant means by "stop." To the extent Defendant here takes issue with the existence of reasonable suspicion on Officer Fielden's part before detaining Defendant, the Court has just addressed this argument. If Defendant instead is contending Officer Fielden had no authority to stop–that is, pull over–the vehicle in which Defendant was traveling, governing Fourth Amendment doctrine forecloses this argument.[8] As long as an officer has probable cause to believe a vehicle is being operated in violation of the traffic laws, the officer may conduct a traffic stop of that vehicle even if his actual motivations for the stop may concern matters other than the traffic violation. *Whren v. United States*, 517 U.S. 807, 813-14 (1996); *United States v. Hughes*, 606 F.3d 311, 315 n. 7 (6th Cir. 2010) ("[I]t is possible for there to be probable cause for a stop even where the facts that give rise to that probable cause (such as a violation of traffic laws) play no role in an officer's decision to make the stop."). Here, Officer Fielden had probable cause to believe Brummit was not wearing his seatbelt, a violation of Tennessee's safety belt ordinance. Tenn Code Ann. § 55-9-603(a)(1). That Officer Fielden may

---

[8] Magistrate Judge Lee found that Officer Fielden legitimately initiated the traffic stop. She also noted Defendant essentially conceded the point. Moreover, it is hard to see how Defendant, in the circumstances of this case, has standing to contest this issue since he was not the driver and was not detained in or adjacent to the vehicle.

have had other concerns in mind when he activated his emergency equipment to make the stop poses no Constitutional problem.

IV. **CONCLUSION**

After reviewing the record, the Court finds the Magistrate Judge properly concluded Defendant was not seized until Officer Fielden subdued him with a taser. Therefore, the gun Defendant abandoned before he was seized is admissible as evidence against him. Accordingly, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 21). Defendant's Motion to Suppress will be **DENIED** (Court File No. 14).

An Order shall enter.

/s/
**CURTIS L. COLLIER
CHIEF UNITED STATES DISTRICT JUDGE**